# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5786 | **DATE** | 5/29/2002 |
| **CASE TITLE** | ASHLAND PROD INC. vs. TRUTH HARDWARE CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Status hearing held and continued to August 13, 2002 at 9:00 a.m. Leave is granted to file summary judgment motion and motion for admissibility with supporting briefs by June 19, 2002. Responses to be filed by July 26, 2002. Replies to be filed by July 3, 2002. Briefs are limited to 20 pages. Enter Memorandum Opinion And Order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 3 0 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 89 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 02 MAY 29 PM 5:07 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASHLAND PRODUCTS, INC., ) <br> ) <br> Plaintiff/Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> TRUTH HARDWARE CORPORATION,) <br> ) <br> Defendant/Counter-Plaintiff. ) | Case No. 99 C 5786 <br><br> Hon. John W. Darrah |

**DOCKETED MAY 3 0 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ashland Products, Inc. ("Ashland"), filed a two-count complaint against Defendant, Truth Hardware Corporation ("Truth"), seeking a declaratory judgment that Ashland has not infringed Truth's Patent No. 5,765,308 ("the '308 patent") and that the '308 patent is invalid and unenforceable. The '308 patent makes eight claims directed to a window operator used in combination with a window frame. Truth subsequently filed a counterclaim for infringement and injunctive relief.

The parties disputed the meaning of two terms in the '308 patent, "base" and "slot". Truth moved for a claim construction hearing on the disputed terms under *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). After the submission of briefs, the Court heard oral argument on April 29, 2002. The Court has also considered the briefs submitted by the parties and defines the disputed terms as follows.

## LEGAL STANDARD

Claim construction is a question of law. *Kopykake Enters., Inc. v. Lucks Co.*, 264 F.3d 1377, 1381 (Fed. Cir. 2001). Claim construction "is the process of giving proper meaning to the claim

language", which defines the scope of the claim. *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). "[A]ll terms in a patent claim are to be given their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Absent compelling circumstances, "a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord*, 274 F.3d at 1342. Claim terms will be construed in a way that is consistent with their appearance in other claims of the same patent or other parts of the same claim. *Rexnord*, 274 F.3d at 1342.

The claim language is the focus of determining the meaning of disputed claim terms. *Abtox*, 122 F.3d at 1023. However, courts will consider intrinsic evidence, the claims, the specification, and the prosecution history. *Kopykake Enters.*, 264 F.3d at 1381. If the meaning of the disputed terms are still ambiguous after consideration of intrinsic evidence, courts will consider extrinsic evidence. *Kopykake Enters.*, 264 F.3d at 1381. Although a dictionary is considered extrinsic evidence, "[j]udges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996).

Once the court has ascertained the meaning to one of ordinary skill in the art of the disputed term, the court will examine the written description and drawings to be certain that the patentee's use of the term is consistent with the meaning determined by the court. *Rexnord*, 274 F.3d at 1342. A claim construction that excludes the preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Rexnord*, 274 F.3d at 1342 (quoting *Vitronics*, 90

F.3d at 1583). The drawings and written description are examined "to determine whether the patentee has disclaimed subject matter or has otherwise limited the scope of the claims." *Rexnord*, 274 F.3d at 1343. The court should also examine the prosecution history to determine whether the patentee has ascribed a special meaning to the term that is inconsistent with the term's ordinary meaning. *Vitronics*, 90 F.3d at 1582. Furthermore, any meaning that was disclaimed during the prosecution of the patent as revealed by the prosecution history is excluded. *Vitronics*, 90 F.3d at 1583.

## ANALYSIS

Initially, the parties disputed the construction of the terms "base" and "slot". Truth argued that the term "base" used in the '308 patent was properly construed as meaning "a one-piece, single element, which is an integral part of the operator and which acts to support the rest of the operator, and which excludes separate but physically or imaginarily joined elements." (Mot. Markman Hearing Claim Construction at ¶ 13.) However, Truth later conceded, in its Opening Claim Construction Brief and at oral argument, that a "base" can be comprised of more than one piece as long as those pieces were cohesive. (Truth's Opening Claim Construction Br. at 5 n.6.)

It should be noted that neither the claims nor the specification of the '308 patent state or specify that a "base" must be a single piece. The '308 patent uses the term "base" to refer to a window operator's bottom support or mounting surface. However, in none of these references does the '308 patent ever state that the bottom support or mounting surface must be composed of a single piece. Furthermore, a "base" is defined as "the bottom of something considered as its support[;] that on which something rests or stands[;] foundation." Webster's Third International Dictionary 180 (3d ed. 1986).

Based on the foregoing, "base" is construed as "the bottom support of the operator; the piece (or multiple pieces) that support the remainder of the operator and/or permit the operator to be mounted to a window frame."

The parties dispute the meaning of the word "slot" as it appears in the claim. The '308 patent claims "a base having an interior support surface and a bottom exterior surface with a slot therein, said base attached to said frame with said raised surface fitting substantially within the slot."

Truth argues that "slot" should be defined as single uninterrupted channel or groove that is bounded by the exterior surface of the bottom of the base that may engage a raised surface in a manner that internalizes it. Ashland argues that the "slot" need not be continuously bounded.

A "slot" is generally defined as "a long and narrow opening or groove[;] slit." Webster's Third International Dictionary 2146 (3d ed. 1986). This definition does not state that a "slot" is continuously bounded.

Nothing in the claim language itself requires the "slot" to be a single, uninterrupted channel. The '308 patent teaches the prevention of air and water infiltration through "a raised wall of rectangular cross-section extending along a sill of a frame that fits substantially within the slot when the operator is secured to the frame. The wall prevents the unobstructed flow of air and water along the bottom of the base and the sill." '308 Patent, Col. 6, ll. 4-8. The specification does not state that the "slot" must be continuously bounded. Rather, the specification states that a raised wall must be able to fit substantially within the "slot". A raised wall or window sill could substantially fit within a "slot" that was not continuously bounded. Furthermore, as Truth now concedes, the fact that a "base" may be composed of more than one piece is further evidence that a "slot" need not be continuously bounded. Finally, the specification of the '308 patent teaches that "[s]till other aspects,

-4-

objects and advantages can be obtained from a study of the specification, the drawings and the appended claims." '308 Patent, Col. 7, ll. 32-34. This language indicates that Truth's definition of "slot" would impose a limitation on the term that is not warranted by the '308 patent's specifications or claims or by the ordinary meaning of "slot".

Therefore, based on the foregoing, a "slot" is construed as "a groove or opening in the bottom exterior surface of a window operator's bottom support that accommodates a raised surface of a window frame."

Dated: May 29, 2002

JOHN W. DARRAH
United States District Judge